THE STATE OF CONNECTICUT *vs.* LEON WEINER ET ALS.

Second Judicial District, Norwich, April Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

Having instructed the jury as to the elements essential to be proved by the State in order to constitute the crime of receiving and concealing stolen goods, the trial court later in its charge, in referring to the subject, omitted one of these elements. *Held* that this was a mere inadvertence which could not have harmed the accused.

One of the three accused of the theft pleaded guilty and testified for the State. *Held* that this testimony, being that of a self-confessed thief, required corroboration, as the jury were instructed; but that it was not improper for the trial judge to call the attention of the jury, in this connection, to the fact that the witness was testifying after conviction, and so without hope of escaping punishment.

It is not now the rule in this State that the testimony of every accomplice needs corroboration; corroboration is, however, required, if moral turpitude attaches to the offense.

An instruction that certain testimony, if believed, would warrant the jury in finding that the accused had received and concealed a portion of the stolen property, is not open to the criticism that it removed from the jury's consideration the question of the guilty knowledge of the accused.

It is not necessary for the trial judge, in each reference to different portions of the evidence, to restate all the essential elements of the alleged crime, and his omission to do so furnishes no ground of error.

Guilty knowledge upon the part of one accused of receiving and concealing stolen property can ordinarily be established only as an inference from other proved facts and circumstances; and such inference may be drawn by the jury provided the facts and circumstances upon which it is based are such that a reasonable man of honest intentions, in the situation of the accused, should have come to that conclusion.

In determining this question of guilty knowledge the jury are entitled to consider not only the circumstances which surrounded the accused at the time he received the property, but his own conduct then and immediately thereafter with respect to such property.

To "receive" stolen goods there must be an actual exclusive possession of them, although that may be taken by two or more persons jointly. In such a case the mere manual possession or concealment of the property by one, while the other is acting with him

and standing by and seeing the property concealed, is a possession and concealment by both, although as to one the possession may be, in the eye of the law, constructive.

Argued April 25th—decided June 15th, 1911.

INFORMATION for the theft of two horses, harnesses, lap robes and other articles, brought to the Superior Court in New London County and tried to the jury before *Burpee, J.;* verdict and judgment of guilty, and appeal by Weiner, one of the accused. *No error.*

*Charles W. Comstock* and *John H. Barnes,* for the appellant (the accused).

*Hadlai A. Hull,* State's Attorney, for the appellee (the State).

THAYER, J. The information charges the defendant and two others, Epstein and Needles, with the crime of theft. Needles plead guilty, and testified for the State that he and Epstein stole the property in question, consisting of horses and carriage and harnesses, in Rhode Island, and brought it to the defendant's farm in Montville in this State. It was the claim of the State that Weiner was an accessory to the crime, or that he received the goods and concealed them, knowing them to have been stolen, and so was punishable under the statute (§ 1210) as a principal thief.

The assignments of error all relate to the charge of the court. The first claimed error discussed by the defendant in his brief is not found among his assigned errors. It is based upon the court's neglect at one point in its charge, when speaking of the elements essential to constitute the crime of receiving and concealing stolen goods, to state that concealing was one of the elements of the crime. This was a mere inadvertence, for the court had previously instructed the jury

that to warrant a conviction the burden rested upon
the State to prove, beyond a reasonable doubt, that the
accused actually received into his possession the goods
or articles alleged to have been stolen, that after receiv-
ing them he followed that act up by concealing them,
and that at the time the articles were received and con-
cealed he knew that they were stolen. Of this no com-
plaint is or can be made by the accused. After this clear
statement of the facts essential to be proved to warrant
a conviction, the accused could not have been harmed
by the inadvertence complained of.

Having told the jury that the testimony of Needles
was to be regarded as that of an accomplice, and that
it needed corroboration, and having called their atten-
tion to certain corroborating circumstances claimed
to have been proved by the State, the court said to
the jury: "I call your attention to the fact that now,
having pleaded guilty, Needles is face to face with the
results of his crime; that he must face and endure his
punishment, and that the falsity or truth of his story
can have no longer any effect upon the consequences
of his crime." This is assigned for error as improper
comment. There is nothing in the record to show that
any promise had been held out to this witness that
his punishment should be mitigated if he testified for
the State, or that the fact was not as stated by the
court. Having told the jury that the accomplice was
not a full witness, it was not improper to call their
attention to the fact that he was testifying after con-
viction, and so without hope of escaping punishment.
It was not the fact that he was an accomplice, but the
fact that he was a self-confessed thief, which affected
his credibility. It is not now the rule in this State that
the testimony of every accomplice needs corroboration.
It is only when moral turpitude attaches to the fact
that they are accessories that the court needs to caution

the jury that corroboration is necessary. In this case that fact was present, and the court properly charged that corroboration was necessary. *State* v. *Carey*, 76 Conn. 342, 348, 56 Atl. 632. So far as appears, the accused could not have been harmed by the comment complained of.

The instruction complained of in the second assignment of error is too manifestly correct to require comment. If Weiner and Epstein took the harnesses, part of the stolen property, from the carriage into a lot, and there placed them in boxes, and nailed the boxes up, and covered them with other boxes, there was evidence before the jury which warranted them, if they believed the evidence, in concluding that the parties were engaged both in the receiving and concealing that portion of the property, and the jury were so instructed. That is the instruction complained of. This is not equivalent to telling the jury that they could from these facts find the parties guilty of receiving and concealing the goods, knowing them to be stolen, nor does it eliminate, as the defendant contends, the question of guilty knowledge from their consideration. The jury were not told that from these facts alone they could find the parties guilty, or that they had knowledge that the goods were stolen property.

The third assignment of error relates to a portion of the charge which purports to state the claim of the State touching the conduct of the accused. It does not appear that it is not a correct statement of the claim, it contains no statement of any legal proposition, and the appeal presents no question for the consideration of this court.

In the portion of the charge criticized in the sixth assignment of error, the jury were told that if, from certain evidence referred to by the court, they were satisfied, beyond reasonable doubt, that Weiner, on the

day after the stolen horses were brought to Montville, drove one of them to New London and attempted to sell it for one half its value, they would be justified in finding that he received and concealed it. It is claimed that this makes the guilt of Weiner depend upon this transaction at New London, and not upon his receiving and concealing the horse, knowing it to be stolen. The court was discussing the evidence. It had already told the jury that to convict it must be proved that the accused received and concealed the horse, knowing it to be stolen. It is to be observed that in the portion of the charge now complained of, as in the case already referred to under the second assignment of error, the jury were told, not that they would be justified in finding from the transaction that the accused was guilty, or that he had guilty knowledge, but that they would be justified in finding that he received and concealed the property. Whether this was strictly correct in the present instance we need not inquire, because the appeal does not raise the question. It is evident that it is not erroneous on the ground stated in the assignments of error.

Having once charged the jury as to what were the essential elements of the crime to be established by the State, it was unnecessary that they should be repeated in each paragraph of the charge when the court was discussing the evidence, and its omission, when commenting on the evidence, to again instruct the jury that knowledge was essential to be proved, was not error. The seventh assignment of error, which complains only of such omission, is therefore without substantial foundation.

Referring to the testimony bearing on Weiner's knowledge that the property was stolen, the court said to the jury: "He says that no one told him that this was stolen property—and that testimony has not

been contradicted. No one has appeared who testifies that he said to Weiner, or who gave him any positive and direct information, that it was stolen property. But if from all the circumstances which surrounded Weiner at the time, from what he saw and heard, he as a reasonable man should have come to the conclusion that it was stolen property, then you may infer his knowledge from such circumstances and facts. You have only to ask yourselves what knowledge would a reasonable man of honest intentions infer or gather from the facts and circumstances that were around him and that he saw and heard about him." This part of the charge is claimed to be erroneous in the eighth, ninth, tenth, and eleventh assignments of error, upon the ground stated in the seventh assignment (which has just been considered), and also because it permits the jury to infer that Weiner had knowledge that the horse was stolen, "provided said Weiner as a reasonable man, from all the circumstances that surrounded him at the time and from what he saw and heard, should have come to the conclusion that the horse was stolen property"; and because it was in effect an instruction that he might be found guilty, "although knowledge did not exist in his mind that the horse had been stolen," and because error, mistake, or negligence on his part, in drawing his conclusion on the facts that the horse had not been stolen, are made by the instruction the equivalent of a criminal knowledge on his part that it had been stolen.

That knowledge of a fact may be inferred as a fact from other facts proven, is a well-settled rule of evidence. This is often the only way of establishing what lay in the mind of a person when he performed an act, or the intent with which he did it. Evidence of this character—circumstantial evidence—is constantly offered and received for this purpose. It is possible that

the jury may draw a wrong inference, just as they may from other evidence. The rule exists. And where such evidence has been introduced jurors are frequently and properly told that they *may*, not that they *must*, infer knowledge, intent, or mental state or condition from such facts. The portion of the charge in question was more favorable to the defendant than he deserved, for it limited the facts which the jury were to consider to those surrounding the accused at the time he received the goods, and told them that if from these Weiner, as a reasonable man of honest intentions, should have come to the conclusion that the goods were stolen, they might find from such circumstances and facts his guilty knowledge. They were not told, as the exceptions assume, that they were to find guilty knowledge because Weiner should have inferred that the goods were stolen. The purport of the language is, and its purpose manifestly was, to instruct the jury that they were not to find guilty knowledge from these facts unless Weiner, as a reasonable man, should, from the same facts, have inferred at the time he received them that the goods were stolen. But the jury were entitled, in determining the question of knowledge, to consider not only those facts but also the conduct of the accused himself at the time he received the goods and immediately after, and they were so told in another portion of the charge. If a person on receiving stolen harnesses goes out into a lot and boxes them up and buries them, those are not facts which he is supposed to have himself considered in determining at the time he received the goods whether they were stolen; but they are very significant and important facts for the jury to consider in their bearing upon the question of his knowledge at the time he received the goods. Had the court not instructed the jury, in the portion of the charge last referred to, that the defendant's own acts,

conduct, and statements might be considered by them in determining whether he had knowledge of the character of the goods, the State could complain of the instruction to which these exceptions relate with better reason than the defendant does. But the court, in the portion complained of, was treating the defendant's claim and evidence that no one had told him that the goods were stolen, and no witness had so testified. The jury were told that they were not bound by this, but could find knowledge from facts and circumstances, as they had previously been told, provided the facts and circumstances were such that a reasonable man in his situation should have inferred it. This did not make his errors and mistakes of judgment in determining whether the horse was stolen the equivalent of knowledge that it was stolen. On the contrary, the jury under this part of the charge would not be justified in finding knowledge unless the facts referred to were such that a reasonable man—the accused as a reasonable man—should have inferred and gathered from them knowledge that the goods were stolen. This, as already stated, was favorable to the accused.

The twelfth and thirteenth assignments relate to kindred matters. Epstein, who was tried jointly with Weiner, denied that he aided Needles in stealing the property in Rhode Island and in bringing it into this State, and the State claimed that if such were the case he aided Weiner in receiving and concealing it. The portions of the charge selected for attack under these two assignments are: "To receive the stolen goods means to take them into one's possession, care or custody; it is not necessary that the accused should take the property into his manual possession—that is, into his own hands; it is enough if he takes it into his constructive possession. . . . It is not necessary that the evidence should show that one of the accused had

physical possession of any or all this property himself and concealed it with his own hands, but if he was present, then knowing that the property had been stolen, and saw it hid by another, and kept silent, and refused to give information to the officer searching for it, such conduct, unless explained, may make such accused person as guilty in law as the other whose hands actually secreted the property." The complaint as to the first portion quoted is that "constructive possession" was not explained to the jury. The portion of the charge omitted in the above quotation sufficiently explains what was meant by constructive possession, for it there appears that while there must be an actual exclusive possession by the receiver, there may be an actual joint possession in two persons which is as to them exclusive. In such a case the mere manual possession or concealment of the property by one, while the other is acting with him and standing by and seeing the property concealed, is a possession and concealment by both, although as to one the possession may be in the eye of the law constructive. No further explanation of constructive possession was necessary, and the defendant was not harmed by the court's failure to further define it.

There is no error.

In this opinion the other judges concurred.