### THE STATE OF CONNECTICUT vs. FRANK D. HENO ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued June 7th—decided July 27th, 1934.

*J. Clinton Roraback* and *Thomas A. Keating,* for the appellants (the accused).

*J. Howard Roberts,* with whom was *Walter Holcomb,* State's Attorney, for the appellee (the State).

BANKS, J. The information charges eight accused with the theft of spirituous and intoxicating liquors from a dwelling-house in Sharon. It was undisputed that the accused Bouton, French and Anthony stole

several cases of Scotch whiskey and assorted liquors and wines, and crocks of Bourbon whiskey, in Sharon and removed the liquors to Millerton, New York, and that they were afterward purchased by the accused Conrad Woycik and removed to the cellar of the house in Danbury occupied by him and his brother, the accused Henry Woycik. Anthony was not apprehended, and Bouton and French pleaded guilty to the information and testified upon the trial as witnesses for the State. It was the claim of the State that the appellants, the other five accused, Heno, Conrad and Henry Woycik, Hunt and Goff, received and concealed the stolen goods knowing them to be stolen. Under our statute (General Statutes, § 6116) the receiver of stolen goods may be prosecuted though the person who committed the theft has not been convicted. The State did not need to rely upon the statute since Bouton and French had pleaded guilty to the theft of the liquors. The appeal is from the denial of the motion to set aside the verdict as against the evidence, and for errors in the charge and the failure to charge as requested.

Upon the issue as to whether the appellants received and concealed the stolen liquors with knowledge that they were stolen, the jury could reasonably have found the following facts: Some of the stolen liquor was stored in a room occupied by Bouton and French over a restaurant in Millerton, and the rest in an old barn in the rear of the restaurant. On the day after it was stolen, Bouton took several bottles of the liquor to Heno's house in Danbury, and started to tell him where he got it, but was told by Heno that he didn't want to know anything about it. Heno and Anthony agreed that, in disposing of the liquor, they would tell the story that it had been given to an employee of an estate to settle a claim for wages. The next day Heno

told Conrad Woycik about the liquor, and the latter, accompanied by Heno, Hunt and Goff, went to Millerton and examined the liquor, the boxes and the labels in Bouton's room and the barn. While in the barn Bouton told Woycik that the liquor was "hot," meaning that it was stolen. After examining the liquor in the barn they returned to Bouton's room where Woycik, in the presence of the others, negotiated for the purchase of the liquor, a price of $486 was agreed upon, and it was agreed that they should return later that night and get the liquor. Hunt, Goff and Conrad Woycik went back to Millerton in Goff's automobile, arriving there about two o'clock the next morning. Heno went in a truck driven by Henry Woycik, arriving there about half an hour earlier. Henry and Conrad Woycik and Hunt assisted in loading the liquor on the truck, and after it was loaded Hunt, Conrad Woycik, Goff and Heno went to Bouton's room where Conrad Woycik gave Bouton $126 in cash and a check for $360 for the liquor. The truck and the automobile with the same occupants left Millerton about four a. m., and met in Danbury, and the liquor was taken to the Woycik house where it was concealed in the cellar. On eight or ten of the cases in which the liquor was contained the words "S. H. Jones, Sharon" were stenciled in black. When the liquor was discovered in the Woycik cellar the stencil marking had been planed off from all but one of the cases. Conrad Woycik asked Bouton, when they were examining the liquor in Millerton, why he hadn't taken the labels and names off the boxes.

Guilty knowledge upon the part of one accused of receiving stolen goods can ordinarily be established only as an inference from other proved facts and circumstances, and may be so inferred if the circumstances are such that a reasonable man of honest inten-

tions, in the situation of the accused, should have come to that conclusion. The jury may consider not only the circumstances surrounding the accused but his own conduct then and immediately thereafter. *State* v. *Weiner*, 84 Conn. 411, 417, 80 Atl. 198. Upon all the evidence in the case, which we have examined with care, the jury were justified in drawing the inference that each of the appellants knew that the liquors purchased from Bouton, and transferred to the Woycik cellar and there concealed, under the circumstances detailed in the evidence, were stolen property. The liquor was taken into the possession of Conrad Woycik and concealed in the cellar of his house. The jury could reasonably have found that the other appellants, standing by and watching and assisting in the operation of the purchase of the liquor and its transportation from Millerton to Danbury with the evident purpose of its concealment there, were aiding and abetting the crime, and were guilty as accessories thereto. *State* v. *Weiner, supra.*

Numerous exceptions are taken to the charge of the court, to the failure to charge as requested, and to the claimed inadequacy of the charge. The accused requested the court to charge that the law required that the testimony of Bouton, an accomplice in the crime charged, should be corroborated by evidence of a clear and convincing character, and except to the charge of the court that the jury should not convict upon the testimony of Bouton unless they found it to be corroborated by other evidence in the case, but that such corroboration might consist of circumstances as well as direct evidence. The accused were not entitled to the charge requested and cannot complain of that given. Our law does not require that the testimony of an accomplice must necessarily be corroborated in order that it may be accepted by the jury. *State* v.

*Frost,* 105 Conn. 326, 334, 155 Atl. 446; *State* v. *Leopold,* 110 Conn. 55, 64, 147 Atl. 118.

The accused requested the court to charge that if the jury found that the liquor was stolen in Sharon by Bouton, Anthony and French, and by them transported to Millerton, New York, and there received by the appellants, the latter were not guilty of the crime charged. The court charged that the State claimed that the appellants received the goods in Millerton and transported them to Danbury, and in Millerton and on the road from Millerton to Danbury and in Danbury concealed the goods knowing that they had been stolen, and that if the jury found that the State had proved these claims beyond a reasonable doubt as to one or more of the appellants they were guilty of theft as charged. This charge was correct. *State* v. *Cummings,* 33 Conn. 260. The request for a broad charge that if the goods were received in New York State the accused were not guilty was properly denied.

The accused Henry Woycik did not testify, and the court charged the jury that "in considering his guilt or innocence you may consider the fact that he did not testify, but you must remember that no burden rests on him to prove his innocence." Section 6480 of the General Statutes reads in part as follows: "The neglect or refusal of an accused party to testify shall not be commented upon to the court or jury." In *State* v. *Ford,* 109 Conn. 490, 146 Atl. 828, we held that neither the constitutional privilege of an accused not to be compelled to give evidence against himself nor this statute protected him from any unfavorable inference which might be drawn by his triers from his exercise of his privilege. The fact that an accused has chosen not to take the stand is a fact in the case for the consideration of the jury. The right of the court to comment upon it, as upon any other relevant fact in the

case, cannot be questioned in the absence of specific statutory prohibition of such comment. Prior to 1879 the statute read: "Nor shall such neglect be alluded to, or commented upon by the prosecuting attorney, or by the court." In 1879 this was repealed and the present statute enacted. The change in the language of the statute is significant of an intention of the legislature to effect a change in the law, and the change effected was to repeal the prohibition against comment by the court leaving in effect the prohibition against comment by counsel to the court or jury. The evil which the statute is designed to prevent is the placing, in the argument of the State, of undue and unfair emphasis upon the failure of an accused to testify. It does not now prohibit comment by the court upon the failure of the accused to take the stand, and the court did not err in the comment made.

The accused predicate error upon a portion of the charge which reads as follows: "One has no legal right to shut his eyes to the obvious and then claim ignorance of the obvious fact. If one finds money in the street he knows it is lost, and he has no right to retain it. If one offers an unusual sale of unusual goods at an unusually low price and the circumstances surrounding the goods and the offered sale are such as to raise a suspicion in the normal, rational mind that the seller has no legal right to make the sale, it is the legal duty of the prospective purchaser to investigate the fact as to whether the offer of sale is honestly made. Such prospective purchaser cannot shut his eyes and ears to explanations and then claim lack of knowledge." It is the claim of the accused that there was no justification in the evidence for this portion of the charge, that it was extremely prejudicial to their case and practically removed from the jury's consideration the question of their knowledge that the

liquor was stolen property. It appears from the finding that the State claimed to have proved that the liquor which Conrad Woycik bought from Bouton for $486 was worth $1128.43 plus $600, the value of four five-gallon jugs of Bourbon whiskey at $30 a gallon which was not found in the Woycik home, that the wooden cases in which it was contained bore the stenciled name of the former owner which was plainly visible and could easily be seen by the accused when they examined the liquor, the boxes and the labels in the barn and made a list of the liquor, that during this examination Bouton told Conrad Woycik in the presence and hearing of Hunt, Goff and Heno that the liquor was "hot" which they understood to mean that it was stolen, and that it was taken in the early morning hours to the Woycik house where it was concealed in the cellar behind a canvas covering. Upon this offer of proof it might well be claimed that the character of the liquor in the possession of Bouton should have been obvious to the accused and this portion of the charge was not inappropriate if the jury found the facts to be as claimed by the State. The statement as to the duty of one finding money in the street, which counsel criticize as an unfortunate illustration, cannot fairly be held to have been seriously prejudicial to the case of the accused.

The accused further claim that the charge of the court was argumentative, that it unduly emphasized the claims of the State and failed to fairly and properly state the claims of the accused. It was the claim of the accused that Bouton told Heno that he was the caretaker of an estate the owner of which had been unable to pay him his wages, and had paid him a part thereof with the liquors in question, and that that was the understanding of the other accused as to the ownership of the liquors. This claim was fairly

presented to the jury by the court and the jury were told to give careful consideration to the claim of each defendant and to their explanations of their conduct. The facts as to the conduct of the accused, which were stated at some length in the charge, were for the most part not in dispute. A careful examination of the charge as a whole satisfies us that it fairly and fully presented to the jury the claims of the accused, and is not fairly subject to the criticism that it over-emphasized the claims of the State to the prejudice of the accused.

Other assignments of error in the charge are without merit, and do not require discussion.

There is no error.

In this opinion the other judges concurred.