STATE OF CONNECTICUT *v.* ROBERT WATSON, SR.
(9142)

FOTI, LANDAU and CRETELLA, Js.

Argued September 26—decision released November 19, 1991

*John W. O'Meara,* special public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *Elpedio Vitale,* assistant state's attorney and, on the brief, *Michael Dearington,* state's attorney, for the appellee (state).

LANDAU, J. This is an appeal by the defendant, Robert Watson, Sr., from a judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70. On appeal, the defendant claims that the trial court (1) improperly permitted a state's witness to testify as an expert, and (2) denied him his constitutional right to present a defense by excluding evidence to support his assertion that the victim falsely accused him of sexual assault. We disagree.

The jury could reasonably have found the following facts. The defendant first met the victim, the girl friend of his son, Robert Watson, Jr., in early November, 1988, soon after the defendant's release from prison. The defendant and the victim began working together to raise bond money to secure Robert, Jr.'s release from prison. Shortly before Thanksgiving of that year, the defendant unexpectedly visited the victim at her apartment. An argument and physical struggle ensued. The defendant grabbed the victim's wrists. She fell backwards; the defendant pinned her to the floor and sexually assaulted her. Afterward, the defendant instructed the victim to tell no one about what had just occurred, and threatened that if she did he would tell Robert, Jr., that they had been having an affair and would have her baby taken away from her. These threats continued over the course of the next few weeks.

The victim told Robert, Jr., about the sexual assault in early January, 1989, and, upon his urging, reported it to the Meriden police on January 8, 1989, approximately six weeks after the incident had occurred. When confronted by Robert, Jr., the defendant's response was that he could not control himself because he had been away from "girls" for a long time. The defendant was subsequently arrested and charged with sexual assault in the first degree.

I

The defendant first claims that the trial court improperly permitted a state's witness, Tina Haurd, to testify as an expert. The question of whether a witness is qualified as an expert is largely a matter within the trial judge's discretion. *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986); *State* v. *Ortiz,* 198 Conn. 220, 228, 502 A.2d 400 (1985); 2 B. Holden & J. Daly, Connecticut Evidence (1988) § 118 (a). The general standard for admissibility of expert testimony in Connecticut is that the expert must demonstrate " 'a special skill or knowledge, beyond the ken of the average juror, that, as properly applied, would be helpful to the determination of an ultimate issue.' " *Davis* v. *Margolis,* 215 Conn. 408, 416, 576 A.2d 489 (1990), quoting *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277 (1973); see also *State* v. *Spigarolo,* 210 Conn 359, 376, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989); *State* v. *Rodgers,* 207 Conn 646, 651, 542 A.2d 1136 (1988); *In re Noel,* 23 Conn. App. 410, 423, 580 A.2d 996 (1990). An examination of the record reveals adequate evidence to support the trial court's actions and we conclude that the trial court did not abuse its discretion in permitting the witness to provide an expert opinion.

The witness testified that she worked at the Women's Center of Southeastern Connecticut as a victim's advo-

cate and as a counselor. As part of her job, she regularly attends court as an advocate for victims of domestic violence, counsels individuals and runs support groups for battered women and for survivors of physical and emotional abuse. Haurd further testified that she had been working with the battered women's project for approximately one year and counseled approximately fifty to sixty people per week. She was then asked: "In your experience, is it unusual for there to be a delay between the actual rape and the reporting of that?" Defense counsel objected on the ground that a proper foundation had not yet been laid for the question. The trial court sustained the objection. Upon further examination, the witness testified that she has been working in her field for one year since receiving a bachelor's degree in psychology from Connecticut College and "see[s] about sixty people a week." She was again questioned regarding her opinion of the frequency in the occurrence of delay in reporting a sexual assault. The question was again objected to on the same ground as the previous objection. The objection was again sustained.

The jury was then excused and the state's attorney attempted to qualify the witness as an expert "in treatment of battered women and attendant fields." On voir dire, the witness testified that in addition to her college education, she has taken a course in counseling battered women at the New London Women's Center and has counseled "around 300 women . . . about a third of [whom] . . . were victims of various types of sexual assault." The trial court overruled defense counsel's objection stating that the testimony goes to the weight of the witness' opinion rather than to the admissibility. The trial court further found that the witness possessed knowledge superior to that of the average layperson and permitted the witness to respond to the question.

In light of the evidence adduced at trial, we conclude that the trial court did not abuse its discretion in permitting the witness to testify as she did. See *State* v. *Sandberg,* 406 N.W.2d 506, 511 (Minn. 1987) (admitting as expert testimony opinion of police officer that sexually abused children delay reporting incidents); *State* v. *Hicks,* 148 Vt. 459, 461–62, 535 A.2d 776 (1987) (witness with masters degree in social work and experience as caseworker with sexually abused children qualified to testify that it is common for victims to delay reporting).

## II

The defendant's second claim is that the trial court violated his right to present a defense by excluding evidence that Rozzda Eggleston, the defendant's daughter, told Robert, Jr., that the victim and the defendant had discussed sex on the telephone. The state objected on grounds of hearsay arguing that the witness was told of this conversation by her mother, Karen Eggleston, who had overheard the conversation. The trial court sustained the state's objection to this question, concluding that such testimony could not be introduced as an inconsistent statement, the purpose for which it was offered, because defense counsel had failed to ask Robert, Jr., during his testimony about the alleged conversation with Eggleston and thus there was nothing to contradict.

Later that same day, the defendant attempted to recall this witness. Defense counsel explained that he intended to offer her testimony regarding her conversation with Robert, Jr., not to prove the truth of the matter asserted therein, but rather to demonstrate that the conversation took place and its effect on the hearer, Robert, Jr. The court concluded that this evidence was irrelevant because defense counsel had failed to establish that Robert, Jr., and the victim had ever discussed

either the telephone conversation between her and the defendant, or more generally, any sexual relationship between her and the defendant. We agree with the trial court.

The first criteria of admissibility is that the evidence must be relevant. "We have often stated that [e]vidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. . . . One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable." (Internal quotation marks omitted.) *State* v. *Alvarez*, 216 Conn 301, 304, 579 A.2d 515 (1990). The trial court has broad discretion on questions of relevance. *State* v. *Echols*, 203 Conn. 385, 393, 524 A.2d 1143 (1987). Moreover, it is the court's right and, indeed, its duty to exclude irrelevant evidence. *State* v. *Daniels*, 8 Conn. App. 190, 194, 512 A.2d 936 (1986). The party offering the evidence bears the burden of demonstrating the relevance of the evidence it seeks to introduce. *State* v. *Franko*, 199 Conn. 481, 487, 508 A.2d 22 (1986). While it is certainly true that the fifth amendment to the United States constitution, which guarantees a criminal defendant the right to present a defense, includes the right of the defendant to present witnesses on his behalf; *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); an accused, in exercising this right, is still bound by the rules of evidence. *State* v. *Kelly*, 208 Conn. 365, 375–76, 545 A.2d 1048 (1988).

The jury is permitted to draw inferences from the evidence adduced at trial. *State* v. *Weinberg*, 215 Conn. 231, 255, 575 A.2d 1003 (1990). These inferences, however, must be reasonable. Id. Here, the inferences the defendant asks us to draw from the trial testimony, (1) that Robert, Jr., believed that the victim and the

defendant were involved in a consensual sexual relationship, (2) that he confronted the victim with this belief, and (3) that the victim fabricated the sexual assault to placate him, are not reasonable in light of the testimony adduced at trial.

In order for the jury to draw such inferences regarding the victim's motive to accuse the defendant falsely, the jury would necessarily have to find (1) that, as a result of Robert, Jr.'s conversation with Eggleston, he believed the victim was engaged in a sexual relationship with the defendant, (2) that Robert, Jr., was either jealous or upset by this information, (3) that Robert, Jr., confronted the victim with this information, (4) that the victim was motivated to dispel Robert, Jr.'s suspicions, and (5) that rather than offering Robert, Jr., an explanation for the conversation, she falsely accused the defendant of sexual assault. In the absence of any evidence to support such inferences, we find the defendant's reasoning to be based on impermissible speculation. Because the defendant failed to fill the missing evidentiary link, he has failed in his burden to establish the reasonableness of the above inferences. We conclude that the evidence was properly excluded and that the defendant was not denied his constitutional right to present a defense.

The judgment of the trial court is affirmed.

In this opinion the other judges concurred.